```
              IN THE UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF ARKANSAS
                         PINE BLUFF DIVISION


FREDDIE BARNES, JR.                                            Plaintiff

v.                              5:11CV00147 JMM

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                       Defendant
```

## MEMORANDUM AND ORDER

Plaintiff, Freddie Barnes, Jr., has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance benefits and Supplemental Security Income, based on disability.  Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error.  Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009); Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not,

however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Plaintiff alleged that he was limited in his ability to work by a bipolar disorder, paranoid schizophrenia, depression, knee problems, high blood pressure and nervous problems. (Tr. 122) The Commissioner found that he was not disabled within the meaning of the Social Security Act.  The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, at which Plaintiff and a vocational expert testified, the Administrative Law Judge (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through

October 26, 2009, the date of his decision.  (Tr. 23-24)  On April 12, 2011, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3)  Plaintiff then filed his complaint initiating this appeal.  (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 41 years old at the time of the hearing.  (Tr. 29)  He is a high school graduate.  (Tr. 29, 127)  He also was certified as a nurse's aide.  (Tr. 127)  He has past relevant work as a certified nurse's aide, cook/cashier, stocker and cook.  (Tr. 23, 33-34, 51-52, 123-24, 150)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2008).  If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience.  Id. §§ 404.1520(b), 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement.  Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If not, benefits are denied.  Id.  A "severe" impairment significantly limits a claimant's ability to perform basic work activities.  Id. §§ 404.1520(c), 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. Id.

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. Id. §§ 404.1520(a)(4), 416.920(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, benefits are denied. Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. Id.

The ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 14) He found Plaintiff had "severe" impairments, a mood disorder and substance addiction/dependence disorder (alcohol). Id. He determined Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing. Id. He judged that Plaintiff's allegations regarding the intensity, persistence and limiting effects of his symptoms were not fully credible. (Tr. 17)

The ALJ found that Plaintiff retained the residual functional

capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> moderate limitations in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; ability to sustain an ordinary routine without special supervision without being distract[ed] by them; ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; respond appropriately to change in the work setting; and ability to set realistic goals or make plans independently of others; and is restricted to unskilled work activity.

(Tr. 15)

He then determined that Plaintiff was capable of returning to his past relevant work as a stocker. (Tr. 23) Thus, the ALJ concluded that Plaintiff was not disabled. Id.

Plaintiff contends Defendant failed to afford appropriate weight to the opinion of his primary therapist, Misty Winters, LMSW, regarding the severity of his impairments and how they affected his ability to function. (Plaintiff's Brief 11-14) The "opinion" at issue are Ms. Winters' ratings in answer to questions on a pre-printed form entitled "Residual Functional Capacity Secondary to Mental Impairments, Including Pain, Fatigue, and Hysterical Paralysis" which she completed March 17, 2009. (Tr. 283-86) The ALJ noted her opinion, but gave it no weight: "The residual functional capacity at Exhibit 10F is rejected because it was not done by a doctor but by a social worker, which is classified as other medical source." (Tr. 22)

Plaintiff relies primarily on Sloan v. Astrue, 499 F.3d 883

(8th Cir. 2007) and the Social Security Ruling which it interprets, SSR 06-03p, which clarifies how the Commissioner considers opinions from sources who are not "acceptable medical sources".[1]  The parties agree that Ms. Winters was not an "acceptable medical source."

The Ruling sets out the factors to be applied in evaluating the opinion of an individual who is not an "acceptable medical source:[2]

1)   How long the source has known and how frequently the source has seen the individual;

2)   How consistent the opinion is with other evidence;

3)   The degree to which the source presents relevant evidence to support an opinion;

4)   How well the source explains the opinion;

5)   Whether the source has a speciality or area of expertise related to the individual's impairment(s) and

6)   Any other factors that tend to support or refute the opinion.  Id. *4-5)

<u>Length of relationship</u>:  Inspection of the transcript reveals that Ms. Winters saw Plaintiff six times from August, 2008, to February, 2009.  At first glance there appear to have been more

---

[1] "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists (for limited purposes), licensed podiatrists (for limited purposes) and qualified speech-language pathologists (for limited purposes).  20 C.F.R. §§ 404.1513(a), 416.913(a) (2008).

[2] These same factors apply to those who are "acceptable medical sources" and "other sources.  Social Security Ruling 06-03p *4.

6

therapy sessions, but there is some duplication of the record, for instance, Tr. 245=246=281, 251=57, 250=255, 248=254.

<u>Consistency with other evidence</u>: Ms. Winters indicated on the questionnaire that Plaintiff had three areas of "marked"[3] limitation of functioning, working in coordination or proximity to others without being distracted by them, accepting instructions and responding appropriately to criticism from supervisors and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 284-85)

Frederick N. Burt, M.D., a staff psychiatrist with Delta Counseling Associates (where Ms. Winters worked) evaluated Plaintiff in June, 2008. (Tr. 233-34) He assessed many areas of normal functioning, normal general information, normal short and long-term memory and normal attention span. <u>Id.</u> He diagnosed bipolar disorder and prescribed lithium. (Tr. 233) When Plaintiff saw Dr. Burt the following month, he indicated he was doing "very well" since starting treatment. (Tr. 236) His memory was good, his general information was good, calculations were good and attention was good. <u>Id.</u> His mood was neutral and his affect was full. <u>Id.</u>

Charles M. Spellman, Ph.D., evaluated Plaintiff July 31, 2008. (Tr. 207-11) He told Dr. Spellman that his treatment was "helping" and he felt "he's getting his life on track." (Tr. 207) Dr. Spellman noted his affect was appropriate, speech was good and

---

[3]Defined on the questionnaire as "[f]rom twenty-one to thirty-five percent or more of work time, the individual cannot usefully perform or sustain the activity." (Tr. 283)

7

thought processes were logical, relevant and goal directed. (Tr. 208) Thought content was appropriate and he was alert and fully oriented. Id. The doctor noted he communicated intelligently and effectively and could communicate in a socially adequate manner although he did not like crowds; he could cope with the typical mental/cognitive demands of work-like tasks. (Tr. 210) Dr. Spellman noted depression, much of which resulted from the recent death of his ex-wife.[4] Id. He could manage funds without assistance. Id.

   Walter Oglesby, M.D., another staff psychiatrist at Delta Counseling Associates, saw Plaintiff January 20, 2009. (Tr. 249) He had been off his medicine "for a while." (Tr. 249) He complained of racing thoughts, irritable mood and depression; he wanted new prescriptions. Id. Plaintiff returned in approximately one month. (Tr. 247) His racing thoughts did not bother him so much during the day; his irritable mood had subsided. His medications were adjusted. Id.

   Winston Brown, M.D., a state agency medical consultant, reviewed records and concluded Plaintiff had some moderate limitation, but no "marked" limitation of functioning; he determined that Plaintiff had the residual functional capacity was unskilled work. (Tr. 214)

   It appears Ms. Winter's opinion of Plaintiff's limitations was greater than those of others who treated Plaintiff or reviewed his

---

   [4]He recorded "bereavement" on Axis I rather than depression. (Tr. 210)

8

records.

<u>Evidence that supports opinion and how well the source explains the opinion</u>: Ms. Winters supplied no evidence in support of her opinions, although the questionnaire three times asks her to "Identify the supporting diagnoses, medical signs, symptoms, laboratory findings and other factors as established by your evaluation and test results." (Tr. 284-85) She left those portions of the questionnaire blank. <u>Id.</u>

<u>Other factors</u>: There are no other factors which support her opinion.

Residual functional capacity checklists such as the one completed by Ms. Winters, although admissible, are entitled to little weight in the evaluation of disability. <u>E.g.</u>, <u>Taylor v. Chater</u>, 118 F.3d 1274, 1279 (8th Cir. 1997); <u>O'Leary v. Schweiker</u>, 720 F.2d 1334, 1341 (8th Cir. 1983); <u>see</u> <u>Wildman v. Astrue</u>, 596 F.3d 959, 964 (8th Cir. 2010)(ALJ properly discounted treating physician's opinion consisting of three checklist forms which cited no medical evidence and provided little to no elaboration); <u>Cantrell v. Apfel</u>, 231 F.3d 1104, 1107 (8th Cir. 2000)(discounting treating physician's two pages of checked boxes devoid of illuminating examples, descriptions or conclusions).

Although it would have been preferable for the ALJ the address Ms. Winters' opinion, under the circumstances, his omission, if error, was harmless. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91, 109 n.13 (1992) (immaterial flaw by ALJ will not justify remand); <u>Hensley v. Barnhart</u>, 352 F.3d 352, 357 (8th Cir. 2003) (ALJ's

incorrect determination of claimant's literacy harmless error where result was same when correct Medical-Vocational Guidelines rule was applied); Hall v. Bowen, 857 F.2d 1210, 1212 & n.2 (8th Cir. 1988)(same result even if ALJ understood the Listing).

Plaintiff also argues the ALJ erred by failing to properly examine whether alcohol was a contributing factor material to the determination of Plaintiff's disability. (Br. 15-18)  Since the ALJ did not find Plaintiff disabled, the procedure to determine whether alcohol was a contributing factor did not come into play.

> The plain text of the relevant regulation requires the ALJ first to determine whether Brueggemann is disabled. 20 C.F.R. § 404.1535(a) ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)).  The ALJ must reach this determination initially, as the ALJ did in Fastner v. Barnhart, 324 F.3d 981, 986 (8th Cir. 2003), using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001).  The ALJ must base this disability determination on substantial evidence of Brueggemann's medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. . . . .
>
> If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent. Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2). . . . .
>
> Only after the ALJ has made an initial determination that 1) Brueggemann is disabled, 2) determined that drug or alcohol use is a concern, and 3) obtained substantial evidence on the record showing what limitations would remain in the absence of alcoholism or drug addiction,

10

>     may he then reach a conclusion on whether Brueggemann's substance use disorders are a contributing factor material to the determination of disability.

Brueggemann v. Barnhart 348 F.3d 689, 694-95 (8th Cir. 2003)(emphasis in original)(footnotes omitted).

Inside his final argument, Plaintiff asserts the ALJ failed to properly evaluate his credibility because the decision fails to refer to Social Security Ruling 96-7 or Polaski v. Heckler.[5] (Br. 17) Plaintiff's argument lacks merit. The ALJ did specifically refer to SSR 96-7.[6] (Tr. 16) Polaski sets forth requirements for ALJs in the Eighth Circuit. Randolph v. Barnhart, 386 F.3d 835, 841 (8th Cir. 2004). The ALJ in this case was based in Louisiana, a part of the Fifth Circuit. (Tr. 9, 12) Thus, he was not bound to follow Polaski. Id.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the

---

[5] 739 F.2d 1320 (8th Cir. 1984).

[6] The ALJ cited Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529 and 416.929. (Tr. 16) That Ruling tracks Polaski and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and elaborates on them.

medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  <u>Richardson v. Perales</u>, 402 U.S. at 401; <u>see</u> <u>also</u> <u>Reutter ex rel. Reutter v. Barnhart</u>, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice.

IT IS SO ORDERED.

DATED this 6th day of June, 2012.

_____
UNITED STATES DISTRICT JUDGE